**UNITED STATES RUBBER COMPANY,**
**Plaintiff-Appellant,**

v.

**BORG–WARNER CORPORATION,**
**Defendant-Appellee.**

**No. 15432.**

United States Court of Appeals
Seventh Circuit.

May 4, 1966.

George B. Newitt, Chicago, Ill., Malvin R. Mandelbaum, New York City, Bair, Freeman & Molinare, Chicago, Ill., Roger W. Robinson, Kenyon & Kenyon, New York City, Henry M. Leigh, Arthur, Dry, Kalish, Taylor & Wood, New York City, of counsel, for appellant.

Dugald S. McDougall, Richard R. Trexler, Donald W. Banner, Chicago, Ill., William S. McCurry, Jr., Chicago, Ill., of counsel, for appellee.

Before DUFFY and SWYGERT, Circuit Judges, and MAJOR, Senior Circuit Judge.

DUFFY, Circuit Judge.

Plaintiff brought this suit under Title 35 U.S.C. § 146 seeking judicial review and relief from a decision of the Board of Patent Interferences in Interference No. 89,636. The Board had awarded to defendant's Calvert application, Serial No. 383,379, priority of invention over plaintiff's Childers and Fisk Patent No. 2,820,773. The effect of that order is to authorize issuance of a patent on the disputed invention to defendant, and to require cancellation of the claim defining that invention from plaintiff's patent.

The invention in controversy is a method for making hard rubber-and-resin plastic compositions which have greatly increased impact strength at low temperatures, as shown by their having a high impact strength (more than 1 foot-pound per inch of Izod notch) at a specified low temperature (—40° C.) when tested by a specific method (the Izod notch test).[1]

The application on which plaintiff's patent issued was filed on August 1, 1955. Borg-Warner's claim rests on an earlier application filed by its assignor, William C. Calvert, on September 30, 1953.

In establishing an interference, the Patent Office defines in words what the disputed invention is by designating a representative claim as the "interference count." In this case, Claim I of United States Rubber's Patent No. 2,820,773 was selected as the interference count.

The interference count is somewhat difficult for a layman to understand and is set forth below.[2] However, plaintiff concedes that Example 3 of defendant's Calvert application describes a process

---

1. In the test, a notched specimen is clamped vertically in a vice and broken by a blow from a swinging pendulum or hammer. The device has a scale which indicates the energy expended by the pendulum during the test. The American Society for Testing Materials' Publication is in the record as PX15. It describes in detail the manner in which the specimens are to be prepared and the apparatus to be used in testing them, as well as how the Izod notch value is to be calculated from the energy consumed in breaking the specimens.

2. "The method of preparing a rubber-and-resin product having an impact strength at —40° C. of over 1 foot-pound per inch of Izod notch which comprises polymerizing in a latex of a synthetic rubber containing not less than 95% of polymerized butadiene—1, 3 and not more than 5% of styrene copolymerized therewith, a mixture of styrene and acrylonitrile, the styrene content of said mixture being 25% to 90% of styrene and the acrylonitrile content being correspondingly 75% to 10%, maintaining the amount of dispersing agent in the latex at not more

fully responsive to all the method steps in the count. The real issue in the case is whether the Example 3 disclosure in defendant's application, satisfies the count's preamble, in which the invention is characterized as a "method of preparing a rubber-and-resin product having an impact strength at —40° C. of over 1 foot-pound per inch of Izod notch."

The interference was initiated by a Patent Office order dated September 11, 1958. Since United States Rubber's inventors, Childers and Fisk, had failed to claim a date as early as the filing date of the Borg-Warner application, the Patent Office issued an order to show cause why judgment should not be entered against them on the record. United States Rubber responded with a motion to dissolve the interference on the ground that Borg-Warner's inventor, Calvert, had not disclosed a process of preparing a product "having an impact strength at —40° C. of over 1 foot-pound per inch of Izod notch." That motion was heard and denied by the Primary Examiner who acts as the Patent Office tribunal of first instance.

United States Rubber then moved for leave to take testimony. This motion was heard by the Board of Patent Interferences and was denied. Pointing out that United States Rubber's asserted position was inconsistent with the statements in its own patent that all products made according to the delineated process have the required impact strength, the Board held United States Rubber could not make a showing of inoperativeness as to its adversary's disclosure that would not also extend to its own disclosure.

United States Rubber then submitted a petition to the Commissioner of Patents asking him to overrule the Board and grant it leave to take testimony on the Izod notch question. That petition was denied. The Commissioner held that United States Rubber could not attack the adequacy of Borg-Warner's disclosure on any ground that would impugn the provisions of its own disclosure.

The interference then went back to the Board of Patent Interferences for final hearing. Briefs were filed, the cause was heard, and the issue was again decided against United States Rubber.

The factual statements in United States Rubber's patent which the Patent Office held United States Rubber would not be permitted to repudiate, are as follows:

"The products of the present invention are free from bloom and have greatly increased impact strength at low temperatures showing an impact strength at —40° C. of over 1 foot-pound per inch of Izod notch (ASTM Test D 256–47T).

"The compositions of the present invention comprise 20 to 75 parts of an emulsion polymerized synthetic rubber which is preferably a polybutadiene synthetic rubber, but which may be a copolymer of not less than 95% of polymerized butadiene and not more than 5% styrene copolymerized therewith, and correspondingly 80 to 25 parts of a synthetic resin emulsion polymerizate of a mixture of 25% to 90% of styrene and correspondingly 75% to 10% of acrylonitrile."

During the period in which interference No. 89,636 was before various tribunals in the Patent Office, United States Rubber filed in another branch of the Patent Office, an application to reissue Patent No. 2,820,733, the patent involved in the interference.

than 5 parts per 100 parts of synthetic rubber and polymerized styrene-acrylonitrile contained therein until at least one-half of the styrene and acrylonitrile monomer mixture to be polymerized in admixture with the synthetic rubber has been converted to polymer, the amount of said resin being polymerized in the rubber latex being in the range from one-third to four parts of resin per part of synthetic rubber, and separating the thus formed rubber-resin product from the aqueous medium, said dispersing agent being alkali-metal soap."

The reissue application filed on March 4, 1959, stated that in the text of the original patent the range of proportions of ingredients had been extended on the basis of deponents' knowledge of polymer chemistry and that it had been discovered just recently that the range of proportions was "overly broad" and that the patent was, in consequence, "wholly or partly inoperative or invalid by reason of a defective specification and by reason of the patentees claiming more than they had a right to claim in the patent."

The Patent Office took no action on the reissue application until after Interference No. 89,636 had been terminated. Then, on October 13, 1964, the reissue application was rejected in its entirety because the proposed reissue claims were "unpatentable over the disclosure of the application of Calvert" and additionally because they are "based upon new matter which was discovered after the original patent had issued and was not a part of the disclosure thereof."

In the District Court, the issue was limited to the same question, whether Example 3 of Borg-Warner's Calvert application adequately disclosed the subject matter of the interference count. A stipulation was entered into as follows:

"6. On the issue whether Calvert Application Serial No. 383,379 supports the count in Interference No. 89,636, (a) defendant will rely solely on Example 3 of said application, and (b) plaintiff will raise solely the question whether the product of said Example 3 satisfies the recitation in the count that the product has an impact strength at —40° C. of over 1 foot-pound per inch of Izod notch. The evidence submitted by both parties shall relate to that question."

At the trial, plaintiff, United States Rubber Company, tendered testimony and exhibits directed to its contention that the product of defendant's process lacks the Izod notch impact strength called for by the count.

One of the two witnesses testifying for plaintiff was William E. Wolstenholme, holder of an electrical engineering degree and employed as a research scientist in the United States Rubber Company's physics department. Wolstenholme testified mainly as to tests he had conducted with the Izod notch machine on plastic specimens. The trial court held plaintiff's proof lacked persuasive force especially insofar as it was grounded on plaintiff's Izod testing specialist who was, as the Court said, "evasive, contradictory and lacking in forthrightness."

After considering the briefs and the proposed findings of fact and conclusions submitted by each of the parties, the District Court decided the issues in favor of the defendant. A final judgment was entered upholding the decision of the Patent Office in Interference No. 89,636.

As hereinbefore indicated, plaintiff's only ground to support its contentions that the disputed invention was not adequately disclosed in defendant's patent application, was rejected by three different tribunals in the Patent Office—the Primary Examiner, the Board of Patent Interferences and the Commissioner of Patents.

We hold that the decisions reached by the various tribunals in the Patent Office were correct. It might be possible to rest our affirmance of the District Court on this ground alone as suggested by the defendant.

However, the District Court gave plaintiff an opportunity to offer evidence which the Patent Office tribunals had correctly refused to receive. Before the District Court, plaintiff offered proof respecting Izod notch tests which purported to show that the product of the defendant's process did not break or tear under the impact of the hammer of the testing machine. However, the District Court noted the different conditions under which the tests were made and held the record does not afford even prima facie support for plaintiff's contention that the product of defendant's

process will not break under the Izod notch test.

It is clear that no error of the administrative agency was shown. The Patent Office rightfully decided Interference No. 89,636 by awarding priority of invention to defendant's assignor, William C. Calvert.

Plaintiff has failed to establish any meritorious cause of action against the defendant, and the District Court was, therefore, correct in ordering that the complaint be dismissed.

Judgment affirmed.