59 CCPA

**Emile PLUMAT, Appellant,**

v.

**Donald W. DUNIPACE et al., Appellees.**

**Patent Appeal No. 8653.**

United States Court of Customs and Patent Appeals.

Sept. 14, 1972.

and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Board of Patent Interference awarding priority in interference No. 96,248 to Dunipace et al. (Dunipace), the senior party. In issue are six counts corresponding to claims in Plumat patent No. 3,193,365,[1] copied in the Dunipace application.[2]

The invention relates to drawing glass from a molten glass bath in the manufacture of glass sheets. An inert fluid overlies the molten glass in the region from which the glass sheet is drawn so as to surround the emerging sheet and shield it from air currents. Count 1 is reproduced below, with subdivisions added, as exemplary.

1. A process for drawing sheet glass from a molten glass bath so as to protect the sheet being formed from the cold ambient gas currents in the drawing chamber that are capable of disturbing the required thermal homogeneity of the glass in such sheet, comprising

drawing the glass in sheet form from the glass bath upwardly through a mass of material non-adherent to glass and capable of protecting the glass while it is being drawn therethrough against said ambient gas currents,

the material in said mass being inert to molten glass and having a density less than that of the molten glass, and said mass of material floating as a liquid layer on the glass bath so as to cover the area thereof from which the glass sheet is drawn at the drawing

John J. Hart, New York City, atty. of record, for appellant.

John A. Blair, Bruce G. Klaas, Harness, Dickey & Pierce, Detroit, Mich., attys. of record, for appellees.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, LANE, Judges,

1. Granted July 6, 1965, on an application filed August 30, 1960. A motion to obtain the benefit of the filing date of a Belgian application filed September 9, 1959, was dismissed as belated, but that is immaterial since Dunipace's effective date is earlier than that of the Belgian application.

2. Serial No. 566,086, filed July 18, 1966, as a continuation of serial No. 838,304, filed September 4, 1959.

station and being of sufficient depth to cover substantially the gather from which the sheet is formed,

the molten glass drawn upwardly through said mass of material being in direct contact with such material during its passage through such mass, and said liquid layer of material shielding the molten glass being drawn therethrough against said cold air currents and

increasing the rate of surface congealment of the glass sheet so as to reduce the effects of such cold air currents thereon.

Counts 2–4 are process counts dependent directly or indirectly on count 1. Count 2 adds a recitation of introducing into the chamber box the "floating" mass of material "matter" capable of maintaining the mass of material suitable "for such shielding actions" and "effecting such surface congealment action on the glass." Count 3 further recites that the "matter" of count 2 is a cooling medium. A recitation that the same "matter" is directed onto the mass of material so as to form a protective layer is added by count 4. Count 5 is an apparatus claim generally similar in scope to count 1. Count 6 adds to count 5 a recitation of means to heat the floating mass of material.

An earlier four party interference on broader counts involved appellant on the basis of the application on which his patent issued and appellees on the basis of their parent application. That interference was dissolved by the examiner on motion, the grounds being that those counts were too broad to be supported by *any* of the applications involved. At the same time, the examiner granted a separate motion to dissolve the interference as to Dunipace on the ground of lack of support for those counts in the parent application. When subsequent ex parte prosecution resulted in the Plumat patent, Dunipace copied the claims corresponding to counts 1–6. The examiner rejected those claims for lack of sufficient disclosure. That rejection was reversed by the Board of Appeals, and the present interference resulted. A motion by Plumat to dissolve because Dunipace has no right to make the counts was set down for final hearing. The board ruled against Plumat on the matter of Dunipace's right to make and also on a charge of estoppel he raised against Dunipace.

In deciding that Dunipace had support for the counts, the interference board agreed with the Board of Appeals on the issues on that question that had been raised before that body. Also it considered and rejected an additional charge, raised by appellant but not involved in the ex parte appeal, that appellees' disclosure was deficient for failure to disclose by name a metal for the liquid layer of material through which the glass sheet is drawn.

No priority evidence was introduced by either party. The only issues before us are Dunipace's right to make the counts and the charge of estoppel.

### Opinion

■ In arguing that the counts are not supported by the Dunipace application, Plumat contends that the counts are concerned primarily with accelerating surface congealment of the glass sheet during formation. He apparently relied particularly on the recitation of the counts, as appears at the end of count 1, for "increasing the rate of surface congealment of the glass sheet so as to reduce the effects of such cold air currents thereon." Appellant seems to think that the Dunipace application does not meet that requirement because it emphasizes that its apparatus stabilizes and renders more uniform the temperature of the molten glass in its upper strata in the area from which the sheet is drawn.

However, Dunipace uses the pool of fluid for combatting *both* causes of surface distortion, which he states to be "a lack of sufficiently uniform temperature conditions from side to side of the mass of molten glass from which the sheet is

being formed, and also from the adverse influence of thermally induced air or convection currents that move toward, along and around the newly formed sheet." The latter problem is solved by drawing the glass through the fluid, which "positively prevent[s] any contact between the newly formed glass sheet and the air within the machine in the critical area of the zone of sheet formation." Dunipace's application defines the "zone of sheet formation" to be "the zone through which the newly formed sheet moves before it has become set to a degree where it is not adversely affected by surrounding atmospheric conditions, and which lies between that point and the point where the sheet emerges from the mass of molten glass." Dunipace points out that the use of the fluid body on top of the molten glass is *also* helpful in solving the temperature uniformity problem but that does not detract from Dunipace's support for the contested limitation.

As found by the Board of Appeals, it is evident that the temperature of the sheet being formed in Dunipace is controlled during its passage through the liquid layer by controlling the temperature of the layer so that the surface of the sheet will be sufficiently congealed prior to its emergence from the top of the layer so as not to be affected by the air currents there-beyond—the very same result that the Plumat patent seeks and one that requires cooling of the glass as it passes through the layer. The Board of Appeals also found the count terminology in question to be but an expression that the molten glass drawn upwardly from the top of the glass both congeals and forms sheet glass as it passes through the inert liquid layer.[3] Those views, with which

the Board of Patent Interferences was "in full agreement," strike us as sound and demonstrate that the Dunipace application supports the count recitations insofar as the congealment of the sheet is concerned.

The charges appellant raises against the Dunipace application which were not before the Board of Appeals are that the application does not name a specific metal for the liquid material or layer of the counts and that it does not disclose that the material is non-adherent to glass. The interference board recognized that appellees have the burden of showing a clear basis for the counts in their disclosure. It concluded from a careful analysis that appellees had met that burden and we agree.

The counts define the material in question by properties rather than name, stating that it is non-adherent to glass, inert to molten glass, has a density less than molten glass and referring to it as floating as a liquid on the glass bath. The Plumat patent as filed, except for lacking any mention of the "non-adherent" feature, disclosed the same characteristics and mentions that the material may be a metal, naming aluminum and magnesium and their alloys. The Dunipace application discloses use of a "relatively dense fluid that is inert to glass at the forming temperatures" and later states that the fluid

> may be any heavy gas or light liquid that will be substantially inert and noninjurious to the glass with with which it comes in contact. An example of a suitable gas is xenon and an example of a suitable liquid is molten metal, preferably one that is lighter than the molten glass.

We think that the application thus discloses all the properties, including

3. Appellees assert that the expression *"increasing* the *rate* of surface congealment" (emphasis supplied) is meaningless in the absence of some standard of comparison and that none is indicated in the counts or in the specification of

the Plumat patent. Thus, while the specification refers to *"state* of surface congealment" (emphasis supplied) three times, it contains no reference to the "rate" of congealment.

that of being lighter than the molten glass, necessary for a person skilled in the art to select a suitable metal for use in molten condition in the invention of the counts. A person skilled in the glass working art would be well versed as to the melting points, boiling points and densities of the various metals and of glass, and he would certainly be able to select a metal meeting the Dunipace requirements, particularly with the aid of tables in handbooks giving such properties.[4]

As to the recitation that the material is "non-adherent to glass," the board stated:

> The limitation "non-adherent" was not present in the Plumat application as originally filed but was inserted by amendment on December 16, 1964 and there is nothing in the "Remarks" accompanying the amendment to explain the source of this limitation. Accordingly, since the Primary Examiner did not object to this limitation inserted by amendment as new matter, we are constrained to conclude that the quality of being "non-adherent" was considered *inherent* in the inert supernatant liquid of Plumat. Having so held, we are of the opinion that the liquid employed by Dunipace in the same manner as Plumat and also described by Dunipace as inert and non-injurious to the glass is also inherently non-adherent to the glass.

We find no error in the board's conclusion. As the board pointed out, the material is described in the Dunipace application as being "inert and non-injurious to the glass." Appellant, whose application merely stated that his materials were "inert to molten glass" prior to the amendment referred to by the board, is hardly in a position to argue lack of

support in the Dunipace application. *Cf.* Parker v. Frilette, 462 F.2d 544, 546, 59 CCPA (1972). At any rate, after a thorough review of the matter, we are of the opinion that one skilled in the art reading Dunipace's application, especially the phrase "inert and non-injurious to the glass," would envision the use of only non-adherent materials in the process. We thus are fully satisfied that the board did not err in rejecting the charge that appellees do not have the right to make the counts.

■ Plumat grounds his claim of estoppel against appellees on the previous interference which was dissolved without an award of priority. He states that his application at that time included claims, not then under rejection, which after amendment in later prosecution became the claims of the patent constituting the present counts. He asserts that Dunipace should have moved to contest this common subject matter in the first interference. However, appellees were the senior party in the earlier interference and Rule 257 of the Patent Office Rules of Practice provides that the parties are presumed to have made the invention in the chronological order of the filing dates and that dissolution without an award of priority shall not disturb that presumption. Although appellant has cited certain prior decisions, each of them is distinguished from the present case in an obvious manner, and none of them is authority for finding estoppel against a senior party under the present circumstances. Nor do we know of any such authority. We find that appellant's contention of estoppel is clearly without merit.

### Taxation of Costs

■ Appellant asks that the cost of printing certain material added to the

---

4. Appellees refer to Fromson patent No. 2,754,559, of record as a result of its having been cited in the ex parte prosecution of both cases. The patent includes a table listing melting point, boiling point and specific gravity of various metals, including aluminum and magnesium which are shown to be particularly light in weight.

record at appellee's request be taxed to appellees because it was not material to the issues in this appeal. We have found that a substantial part of the material, such as the original claims in the Plumat application and a motion to dissolve brought in the earlier interference, were either directly pertinent or reasonably liable to be found material to the issues here. Also, a substantial part, as certain papers relating to prosecution of the earlier Dunipace application, was not sufficiently material to the determination of the issues to be reasonably included in the record. Accordingly, the disputed costs will be divided equally between the parties.

The decision is affirmed.

Affirmed.