Richard T. METCALFE, Harry D. Crandon, Appellants,

v.

Gerald HAMPEL, Appellee.

Patent Appeal No. 76–536.

United States Court of Customs and Patent Appeals.

April 29, 1976.

Alan H. Spencer, attorney of record, Southbridge, Mass., for appellants; Donald

R. Dunner, Robert D. Bajefsky, Lane, Aitken, Dunner & Ziems, Washington, D.C., of counsel.

Julius Tabin, James J. Schumann, Fitch, Even, Tabin & Luedeka, Chicago, Ill., attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Patent Interferences (board) awarding priority of invention to senior party-appellee Hampel [1] over junior party-appellants Metcalfe and Crandon [2] (Metcalfe). We affirm.

## The Invention

The count is directed to a method of making molded eyeglass frame components from a mixture comprising an epoxy resin, a curing agent, and a coloring agent:

A method of coloring epoxy resin eyeglass frames and parts thereof manufactured from liquid ingredients, an epoxy composition and a hardener, comprising the steps of

adding small amounts of a coloring agent selected from spirit soluble azo dyes and finely divided pigmenting material to at least one of the liquid ingredients immediately prior to casting the liquid ingredients,

metering the liquids into a mold having cavities therein in the form of eyeglass frames and parts thereof,

completely curing the liquid ingredients and included coloring agent in the mold to produce a self-sustaining, completely polymerized colored eyeglass frames or parts thereof,

removing the colored polymerized eyeglass frames or parts thereof from the mold, and

subjecting selected portions of the colored polymerized eyeglass frames or parts thereof to heat or ultraviolet irradiation to chemically bleach selected areas of the frame and parts thereof to produce demi-shades in the colored polymerized eyeglass frames or parts thereof.

## Interference Proceedings

Hampel was accorded the benefit of the filing date of his parent application. Metcalfe relied upon the subsequent filing date of his patent. Under 37 CFR 1.231(a), Metcalfe moved to shift the burden of proof and to dissolve, alleging, inter alia, that Hampel had no support in the parent application for the count under 35 U.S.C. § 112, first paragraph. Contingent upon grant of the motion to dissolve, Hampel moved to amend the count by deleting "spirit soluble" and "immediately." Metcalfe's motions were denied, Hampel's contingent motion was treated as moot, and Metcalfe was ordered to show cause why judgment should not be entered against him. The board granted Metcalfe's request for review at final hearing of the denial of his motions. No testimony was taken by either party.

## Board

The board considered the sole issue to be "whether Hampel was properly accorded the benefit of the filing date of his parent application." [3] Though the board did not so describe its approach, the decision below turned on whether Hampel's parent appli-

1. Application serial No. 65,654, filed August 20, 1970, entitled "Method For Making Spectacle Frame Components" is a continuation-in-part of abandoned application serial No. 689,952 (parent), filed December 12, 1967, entitled "Production of Patterned Shaped Bodies by Heat-Induced Color Change."

2. U.S. Patent No. 3,678,141, issued July 18, 1972, based upon application serial No. 816,822, filed April 16, 1969, entitled "Process For Coloring Epoxy Plastic Eyeglass Frames and Parts Thereof."

3. Metcalfe's arguments that the count is unpatentable to Hampel over foreign counterparts of Hampel's parent application (French patent 1,548,108 and British patent 1,196,789) and that Hampel's parent application did not comply with the best mode requirement of the first paragraph of 35 U.S.C. § 112 were not considered on their merits by the board since they

cation disclosed support for either "spirit soluble azo dyes" or "finely divided pigmenting material."

The board found "spirit soluble azo dyes" unsupported by Hampel's parent application. Although "azo dyes" are generically disclosed therein, Hampel's admission at final hearing that not all azo dyes are spirit soluble led the board to conclude that spirit soluble dyes were not inherently disclosed in Hampel's parent application. The lack of specific disclosure and the failure of Hampel's submissions to establish that reference in the application to certain trademarked dyes would have constituted a disclosure of spirit soluble dyes to those skilled in the art, resulted in a finding of an absence of support for "spirit soluble azo dyes."

The board found, however, that Hampel's parent application supported the alternative, "finely divided pigmenting material." [4] Noting that disclosure to be no more deficient than the corresponding disclosure in the Metcalfe patent, the board said:

> Counsel for Metcalfe readily admitted at final hearing that there is no example in the Metcalfe patent directed to the use of a pigment in a process falling within the scope of the count. The patent discloses that dyes and pigments may be incorporated into epoxies or hardners [sic] which are used in the process of the count. The patent also discloses, in connection with an embodiment not claimed therein, the use of "white pigment" and "black dispersent [sic] pigment." No specific white or black pigment is disclosed in the patent, let alone a specific white or

black pigment which will change color upon application of heat.

Stating that a "patentee should [not] be permitted to attack the adequacy of an applicant's disclosure on any ground that would impugn the patentee's disclosure," the board found that Hampel's parent application enabled one skilled in the art to practice the process defined by the count using a finely divided pigment material.[5]

## OPINION

The claim language under consideration, "selected from spirit soluble azo dyes and finely divided pigmenting material," sets forth a type of Markush group. Hence, a finding of support for either "spirit soluble azo dyes" or "finely divided pigmenting material" in Hampel's parent application is sufficient basis for according Hampel the benefit of his filing date and consequent award of priority. Because we agree with the board's finding of support for "finely divided pigmenting material," we deem it unnecessary to discuss the question of support for "spirit soluble azo dyes."

Metcalfe argues that Hampel's parent disclosure is not enabling because it neither exemplifies the use of nor particularizes a "pigmenting material." However, the same can be said of Metcalfe's own patent disclosure. Metcalfe is hardly in a position to attack the sufficiency of his adversary's disclosure on this point. *U. S. Rubber Co. v. Borg-Warner Corp.*, 360 F.2d 861, 149 USPQ 541 (CA 7 1966); *Plumat v. Dunipace*, 464 F.2d 1402, 59 CCPA 1295 (1972); *Parker v. Frilette*, 462 F.2d 544, 59

---

involved issues which are not ancillary to priority. His argument that Hampel was collaterally estopped by a failure to appeal a final rejection of claims in his parent application was not relied upon before us.

4. Hampel's parent application reads:
   Inorganic pigments or organic dyes may be compounded into a synthetic plastic material. The properties of inorganic pigments generally are changed by the loss of water of crystallization at different temperatures, however, such water loss is disadvantageous for the resin. Therefore, organic dyes preferably are compounded with the synthetic plastic selected for manufacturing the shaped bodies.

Particularly translucent dye stuffs [sic] are used, for instance azo-dyes. Such organic dye stuffs, under the influence of heat, are destroyed or converted by rearrangement reaction, and therefore there is no danger that the shaped bodies become cloudy as is the case with the inorganic pigments from which water splits off.

5. Metcalfe had not questioned support for the phrase "finely divided" prefacing the limitation "pigmenting material" until his request for reconsideration. The board responded that "finely divided" was inherently encompassed by the technical definition of "pigment."

CCPA 1311 (1972); *Blicke v. Treves*, 241 F.2d 718, 44 CCPA 753 (1957).

Metcalfe also contends that Hampel admits that his pigmenting material lacks utility. That contention is grounded on the following statements extracted from Hampel's applications:

> Inorganic pigments or organic dyes may be compounded into a synthetic plastic material. The properties of inorganic pigments generally are changed by the loss of water of crystallization at different temperatures, however, such water loss is disadvantageous for the resin. Therefore, organic dyes preferably are compounded with the synthetic plastic selected for manufacturing the shaped bodies. Particularly translucent dye stuffs [sic] are used, for instance azo-dyes. Such organic dye stuffs, under the influence of heat, are destroyed or converted by rearrangement reaction, and therefore *there is no danger that the shaped bodies become cloudy as is the case with inorganic pigments from which water splits off.* [Emphasis added.]

and

> Inorganic dyes and pigments generally change color by means of loss of water of crystallization, and the resultant presence of unbound water within the cured epoxy resin component produces a cloudiness that is considered generally undesirable.

Hampel urges that such a disclosure merely embraces a "nonpreferred embodiment" cautioning that use of inorganic pigments produces a "generally undesirable" (cloudy) product. We agree that the disclosure embraces a non-preferred embodiment.

We find that the parent Hampel application supports "finely divided pigmenting material" and that his application therefore enables one of ordinary skill in the art to make and use the invention. We, therefore, *affirm* the decision of the board.

*AFFIRMED.*

